1  **WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| Superior Marble, L.L.C. | ) No. CV 10-00616-PHX-SMM |
|---|---|
| Plaintiff, | ) **ORDER** |
| vs. | ) |
| Omya, Inc. | ) |
| Defendant. | ) |

Before the Court is Defendant Omya, Inc.'s ("Omya") Motion For Partial Summary Judgment on Plaintiff Superior Marble, L.L.C.'s ("Superior") claim for punitive damages. (Doc. 44). Superior responded (Doc. 51) and Omya replied (Doc. 55). After consideration of the issues, the Court finds the following.[1]

## BACKGROUND

Until 2010, Superior produced and sold sand, feed supplements, gravel, and specialty products made from marble found in only a few locations in North America, including the Queen Creek Quarry (the "Quarry") owned and operated by Omya. (Doc. 1 at 2; Doc. 47 at 1-2). On November 12, 1999, Superior and Omya entered into a long-term "Arizona Supply

---

[1] The parties requested oral argument in connection with this Motion for Partial Summary Judgment. (Docs. 44, 51). The parties have had the opportunity to submit briefing. Accordingly, the Court finds the pending motion suitable for decision without oral argument and the parties' request is denied. See LRCiv 7.2(f).

Agreement" (the "Agreement"), which provided that Omya would supply Superior with marble from the Quarry for at least twenty years. (Doc. 1 at 2; Doc. 47 at 2; Doc. 47-4 at 5).

The Quarry is located on U.S. Forest Service land in Pinal County, Arizona. (Doc. 1 at 3; Doc. 47 at 2). Pursuant to federal regulations, Omya needed approval from the U.S. Forest Service (the "Forest Service") to operate and mine the Quarry. (Doc. 46 at 6; Doc. 47-5 at 2). In 1997, Omya purchased the Quarry and asserts that it initially operated the Quarry under existing temporary permits. (Doc. 47-5 at 2). By 1999, Omya had discussed with the Forest Service a plan to expand the Quarry's operations. (Doc. 47-5 at 2). On November 1, 2002, the Forest Service issued a Decision Notice and Finding of No Significant Impact (the "Decision") pertaining to Omya's planned Quarry expansion. (Doc. 47 at 9). The Decision allowed Omya to continue mining and processing marble and to expand operations to an additional 123 acres of Forest Service land. (Doc. 47-7 at 2).

The Decision also required Omya to comply with certain conditions, including that Omya pave an access road to the Quarry. (Doc. 47-7 at 2). In November 2003, Omya submitted and the Forest Service approved a revised Plan of Operation (the "Plan"). (Doc. 14 at 2; Doc. 47-1 at 6). In 2008, work commenced on the access road with an estimated cost of $885,000. (Doc. 47 at 10). Omya avers that by about October 2008, it became apparent that implementing the Plan would cost about $2.5 million. (Doc. 47 at 11; Doc. 47-5 at 5). On February 6, 2009, citing the unexpected cost of implementing the Plan, Omya gave notice to Superior that it was halting operations at the Quarry. (Doc. 47 at 7). Omya continued to supply materials to Superior until about September 22, 2009, when Omya gave notice to Superior that no further deliveries would be made. (Doc. 47 at 7).

On March 19, 2010, Superior filed its Complaint alleging Breach of Contract and Breach of Duty of Good Faith and Fair Dealing and seeking punitive damages for the bad faith claim. (Doc. 1). Omya's Answer raised the affirmative defense that Paragraph 3(b) of the Agreement ("Paragraph 3(b)") precludes Omya from liability for suspension of operations because Omya was obligated to incur significant liability and expense in order to obtain and maintain a permit to operate the Quarry. (Doc. 14 at 6, 8). The Court granted

1 | Superior's Motion for Partial Summary Judgment finding that Paragraph 3(b) does not
2 | excuse Omya's alleged failure to perform its duties under the Agreement. (Doc. 37). On May
3 | 27, 2011, Omya filed this Motion for Partial Summary Judgment to dispose of Superior's
4 | claim for punitive damages. (Doc. 44).

**LEGAL STANDARDS**

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Jesinger v. Nev. Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994). Substantive law determines which facts are material. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); see also Jesinger, 24 F.3d at 1130. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. The dispute must also be genuine, that is, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." Id.; see Jesinger, 24 F.3d at 1130.

A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." Celotex, 477 U.S. at 323-24. Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Citadel Holding Corp. v. Roven, 26 F.3d 960, 964 (9th Cir. 1994). The moving party need not disprove matters on which the opponent has the burden of proof at trial. See Celotex, 477 U.S. at 323-24. The party opposing summary judgment need not produce evidence "in a form that would be admissible at trial in order to avoid summary judgment." Id. at 324. However, the nonmovant must set out specific facts showing a genuine dispute for trial. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585-88 (1986); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995).

**DISCUSSION**

In its Motion for Partial Summary Judgment, Omya asserts that because Superior's claim for breach of the implied covenant of good faith and fair dealing sounds in contract rather than in tort, punitive damages are not recoverable as a matter of law. (Doc 44 at 6). Superior contends that it can bring a claim for tortious breach of the implied covenant of good faith and fair dealing because a "special relationship" can be found to exist "where restricting recovery to contract damages only would provide more of an incentive for breach of contract than for its performance." (Doc. 51 at 3 (citing Rawlings v. Apodaca, 726 P.2d 565, 577 (Ariz. 1986))). Omya responded that Rawlings does not stand for the proposition that a "special relationship" exists simply because "a party to the contract might believe that it was better off breaching a contract than performing." (Doc. 55 at 8).

Unless there is an accompanying tort, punitive damages will not be awarded in contract actions. Miscione v. Bishop, 636 P.2d 149, 152-53 (Ariz. Ct. App. 1981). Generally, a plaintiff's remedy for breach of the implied covenant of good faith and fair dealing is limited to the contract itself absent a "special relationship" between the parties "arising from elements of public interest, adhesion, and fiduciary responsibility." Burkons v. Ticor Title Ins. Co. of Cal., 813 P.2d 710, 720 (Ariz. 1991). Such a "special relationship" usually involves situations where the contract "is one in which the plaintiff seeks something more than commercial advantage or profit from the defendant." Rawlings, 726 P.2d at 575.

The Court finds that Superior has failed to demonstrate the necessary special relationship to support a claim for the breach of the implied covenant of good faith and fair dealing in tort that would warrant punitive damages. There is no evidence that Superior has a special relationship with Omya in which it "sought protection or security rather than profit or advantage" from Omya. Id. Rather, Omya and Superior are merely two business entities who had entered into an arms-length commercial agreement. Contrary to Superior's argument, a special relationship does not exist simply because restricting its recovery to contract damages could conceivably encourage breach. Thus, as a matter of law, punitive damages cannot be awarded in this case.

**CONCLUSION**

**IT IS HEREBY ORDERED GRANTING** Omya's Motion For Partial Summary Judgment (Doc. 44).

**IT IS FURTHER ORDERED** that Superior is not entitled to punitive damages on its claim for Breach of Duty of Good Faith and Fair Dealing.

DATED this 8th day of August, 2011.

Stephen M. McNamee
United States District Judge